**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

BRAINBUILDERS, LLC,

                    Plaintiff,

        vs.

OPTUM, INC., and JOHN DOES 1 – 20,
JANE DOES 1 – 20, XYZ
CORPORATIONS 1 – 20, and ABC
PARTNERSHIPS 1 – 20,

             Defendants.

No. 2:18-cv-00638 (JMV) (JBC)

**REPLY MEMORANDUM OF LAW**

**Initial Motion Date: August 6, 2018**

**BRAINBUILDERS, LLC'S
REPLY MEMORANDUM OF LAW**

MOTION SEEKING LEAVE TO FILE A FIRST AMENDED COMPLAINT

AND TO REMAND THIS MATTER TO NEW JERSEY SUPERIOR COURT

Vafa Sarmasti, Esq.
**SARMASTI PLLC**
Fairfield Commons
271 U.S. Highway 46 West
Suite A205
Fairfield, New Jersey 07004
T: (973) 882-6666
F: (973) 882-8830
E: vafa@sarmastipllc.com
*Attorneys for Plaintiff BrainBuilders, LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

DISCUSSION ................................................................................................... 1

POINT 1 ...................................................................................................... 2

OPTUM ARGUES BRAINBUILDERS' MOTION DOES NOT MEET ANY OF THE *HENSGENS* FACTORS (OPTUM'S POINT II.A.)

POINT 2 .................................................................................................. 16

OPTUM ARGUES BRAINBUILDERS' CAUSES OF ACTION ARE ESSENTIALLY ERISA CLAIMS AND THE COURT SHOULD THEREFORE CONTINUE TO RETAIN JURISDICTION (OPTUM'S POINT II.C)

POINT 3 .................................................................................................. 21

OPTUM ARGUES THAT BRAINBUILDERS' PROPOSED AMENDED COMPLAINT IS FUTILE (POINT II.B)

CONCLUSION ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn</u>,
410 N.J. Super. 510 (App. Div. 2009). .................................................................. 23

<u>Board of Education v. Hoek</u>,
38 N.J. 213 (1962)................................................................................................... 22

<u>Boyer v. Snap-on Tools Corp.</u>,
913 F. 2d 108 (3d Cir. 1990). ................................................................................. 16

<u>Broad St. Surgical Ctr. LLC v. UnitedHealth Group, Inc.</u>,
2012 U.S. Dist. LEXIS 30466 (D.N.J. March 6, 2012)......................................... 23

<u>Brown v. JEVIC</u>,
575 F. 3d 322 (3d Cir. 2009)................................................................................ 2, 9

<u>Caterpillar, Inc. v. Williams</u>,
482 U.S. 386 (1987)................................................................................................ 20

<u>In re Caterpillar</u>,
67 F. Supp. 3d 663 (D.N.J.  Dec. 16, 2014)…………………………………………15

<u>Chaborek v. Allstate Fin. Servs., LLC</u>
254 F. Supp. 3d 748 (E.D. Pa. 2017). ............................................................ 1, 2, 9

<u>Chambers v. Gesell</u>,
120 F.R.D. 1 (D.D.C. 1988). .................................................................................. 14

<u>City of Perth Amboy v. Safeco Ins. Co. of Am.</u>,
539 F. Supp. 2d 742 (D.N.J. 2008). .................................................................. 3, 10

<u>Cornell & Co. Inc. v. Occupational Safety & Health Review Comm'n.</u>,
573 F.2d 820 (3d Cir., 1978)................................................................................... 15

<u>Emergency Physicians of St. Clare's v. United Health Care</u>,
2014 U.S. Dist. LEXIS 178042 (D.N.J. Dec. 29, 2014)................................... 20-21

<u>Fox Paper Ltd. v. Hanover Ins. Co.</u>,
2016 U.S. Dist. LEXIS 28730 (D.N.J. March 4, 2016)......................................... 15

Hensgens v. Deere & Co.,
833 F.2d 1179 (5th Cir. 1987)..........................................................................Passim

Jewish Lifeline Network Inc. v. Oxford Health Plans (NJ), Inc.
2015 U.S. Dist. LEXIS 64297 ……………………………………………………… .19

Jordan v. AlliedBarton Sec. Servs.,
2010 U.S. Dist. LEXIS 119408 (D.N.J. Nov. 10, 2010). ........................................ 8

In re K-Dur Litigation,
338 F. Supp. 2d 517 (D.N.J. Sept. 29, 2004)...................................................... 23-24

Lafetra v. Kone Elevators,
2010 U.S. Dist. LEXIS 44421 (D.N.J. May 6, 2010). ........................................... 16

Lorenz v. CSX Corp.,
1 F.3d 1406 (3d Cir. 1993)...................................................................................... 15

MedWell LLC v. Cigna Healthcare of New Jersey, Inc.,
2013 U.S. Dist. LEXIS 144577 (D.N.J. Oct. 7, 2013)........................................... 20

Mersmann v. Cont'l. Airlines,
335 F. Supp. 2d 544 (D.N.J., Aug. 17, 2004). ...................................................... 20

405 Monroe Co. v. City of Asbury Park,
40 N.J. 457 (1963)................................................................................................. 23

Morgan v. Union County Bd. Of Chosen Freeholders,
268 N.J. Super. 337 (App. Div. 1993) ……………………………………..22-23

N.J. Carpenters v. Tishman Constr. Corp.,
706 F.3d 297 (3d Cir. 2014).................................................................................. 19

N. Jersey Ctr. For Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey,
2008 U.S. Dist. LEXIS 71231 (D.N.J. Sept. 18, 2008). ................................... 20-21

Parson v. Home Depot USA, Inc.,
2013 U.S. Dist. LEXIS 175185 (D.N.J. Dec., 13, 2013) ....................................... 8

Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,
388 F.3d 393 (3d Cir. 2004) …………………………………………………..19

Penn v. Wal-Mart Store, Inc.,
116 F. Supp. 2d 557 (D.N.J. Sept. 29, 2000)……………………………………..16

Salamone v. Carter's Retail, Inc.,
2010 U.S. Dist. LEXIS 20165 (D.N.J. March 5, 2010) …………………………2-3

Stavitski v. Safeguard Props. Mgmt. LLC,
2018 U.S. Dist. LEXIS 9366 (Jan. 22, 2018)…………………………….1, 2, 9, 22

**Statutes**

29 U.S.C. §1132(a)……………………………………………………………Passim

N.J.S.A. §2A:14-3 ………………………………………………………………..13

**Rules**

Federal Rule of Civil Procedure 12(b)(6). ................................................ 14, 15, 17

Federal Rule of Civil Procedure 41(a)(1)(A)(i)………………………………14, 15

## PRELIMINARY STATEMENT

BrainBuilders, LLC ("BrainBuilders") respectfully submits this Reply Brief in response to defendant Optum, Inc.'s ("Optum") opposition to BrainBuilders' motion (Doc. 20) to amend its complaint, and if the motion is granted, to remand this matter to the Superior Court of New Jersey, Bergen County.

Optum's opposition argues three points: (1) Optum claims BrainBuilders' motion does not meet any of the *Hensgens* factors (Optum Br., Point II.A); (2) if it does meet the *Hensgens* factors, BrainBuilders' motion nonetheless should be denied because it is futile (Optum Br., Point II.B); and (3) if BrainBuilders is permitted to amend, the Court should still retain jurisdiction under federal subject matter jurisdiction because BrainBuilders' claims are completely preempted under the federal Employee Retirement Income Security Act of 1974 ("ERISA") (Optum Br., Point II.C).  Each of Optum's arguments is discussed below.

## DISCUSSION

If the Court concludes BrainBuilders may file its proposed complaint, and join non-diverse defendants, it will divest the court of its jurisdiction and not allow it to consider the sufficiency of BrainBuilders' factual allegations, Stavitski v. Safeguard Props. Mgmt. LLC, 2018 U.S. Dist. LEXIS 9366, *12-13 (Jan. 22, 2018); *see also* Chaborek v. Allstate Fin. Servs., LLC, 254 F. Supp. 3d 748, 751

(E.D. Pa. 2017). Accordingly, the arguments that follow will address Optum's Point II.B (which challenges BrainBuilders' causes of action) last.

**1. Optum argues BrainBuilders' motion does not meet any of the *Hensgens* factors (Optum's Point II.A):**

Optum argues BrainBuilders' motion fails to meet all four *Hensgens* factors. Henegens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). To succeed on this argument, Optum must show that there is no reasonable basis in fact or colorable ground supporting the claim against the defendants BrainBuilders is seeking to join, or there is no real intention in good faith to prosecute the action against these defendants or to seek a joint judgment. Stavitski v. Safeguard Props. Mgmt. LLC, 2018 U.S. Dist. LEXIS 9366, *7 (D.N.J. Jan. 22, 2018) *quoting* Chaborek v. Allstate Fin. Servs., LLC, 254 F. Supp. 3d 748, 751 (E.D. Pa 2017) *quoting* Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009). Optum's opposition fails to do that.

*A.* The First *Hensgens* factor:

With respect to the first factor – i.e., whether the purpose of the proposed amendment is to defeat the court's diversity jurisdiction – Optum asks the court to conclude BrainBuilders' attempt to join Oxford Health Plans (NJ) Inc. (hereinafter "Oxford NJ") "is nothing more than an attempt by BrainBuilders to defeat this Court's jurisdiction". Optum Br., pg. 3. In order to succeed on this argument, Optum must show it is "apparent" that BrainBuilders knew about the non-diverse defendants' wrongful actions "at the time the suit was originally brought in state

2

court, but did not include that party as a defendant". Salamone v. Carter's Retail, Inc., 2010 U.S. Dist. LEXIS 20165, *5-6 (D.N.J. Mar. 5, 2010).  The "mere awareness of a non-diverse party prior to the filing of a complaint combined with a failure to include that party in the original complaint" does not "demonstrate a *per se* intent to defeat diversity." City of Perth Amboy v. Safeco Ins. Co. of Am., 539 F. Supp. 2d 742, 746 (D.N.J. 2008).  Yet, that is exactly what Optum's opposition attempts to argue.

In its Brief, Optum points to a few paragraphs within BrainBuilders' current complaint – paragraphs which do not allege any tortious conduct on the part of Oxford NJ or any of the other proposed defendants - and uses those references as a basis to argue "[t]here is no question BrainBuilders has long known Oxford NJ and what it does [emphasis added]" because it has "refer[red] to Oxford NJ throughout the Complaint". Optum Br., pg. 5.  Optum's Brief fails to point to any portion of BrainBuilders' current complaint to establish that the allegations which BrainBuilders raises in its proposed complaint (against the defendants that it seeks to join) are ones which are already raised in its current complaint.

The references to Oxford NJ within BrainBuilders' current complaint merely allege that as a result of Optum's false, defamatory and outrageous claims in July 2017 (which accused BrainBuilders of having engaged in fraudulent conduct and violated federal and state laws) various carriers which include Oxford NJ had not

3

paid claims that were submitted between July 2017 and November 28, 2017.[1] *See e.g.,* <u>BB Compl.</u>, ¶80 ("<u>as a result</u> [emphasis added] of Optum's false accusations and tortious conduct … BrainBuilders has not been paid for any of its services to patients …"); ¶90 ("… Optum's actions were knowingly aimed at, or negligently <u>resulted in</u> [emphasis added], unlawfully steering away patients being treated by BrainBuilders, a non-participating provider, to participating (in-network) providers within Oxford Health Plans LLC's, [Oxford NJ's], UnitedHealthcare of New York, Inc.'s … UnitedHealthcare of Texas, Inc.'s network.")

Therefore, the few paragraphs that mention Oxford NJ (along with some other UnitedHealthcare entities) were offered to show that Optum's actions had resulted in real adverse consequences to BrainBuilders and resulting damages. None of those paragraphs alleged – much less reveal any tortious conduct – by these proposed defendants, including Oxford NJ. On the other hand, BrainBuilders' proposed complaint raises new allegations that, importantly, occurred after BrainBuilders filed its complaint. <u>Sarmasti Decl.</u>, Exh. B, ¶128. BrainBuilders' proposed complaint goes on to detail the post-filing continued attack on BrainBuilders by the proposed defendants, which as examples include:

- The Oxford Defendants and UHC Defendants allowed individuals employed by Optum Defendants to send systematic and boilerplate letters and communications to BrainBuilders' patients and their parents that

---

[1] BrainBuilders filed its complaint on November 28, 2018.

claimed pre-authorizations are not or will not be granted, and/or that payments relating to BrainBuilders' services will not be made and/or that their appeal will not be considered. Sarmasti Decl., Exh. B, ¶130.

• In order to conceal the Optum Defendants' involvement or to have the letters and communications appear legitimate, the Oxford Defendants and UHC Defendants allowed the Optum Defendants to send these letters and communications to BrainBuilders' patients on letterheads belonging to the Oxford Defendants. Sarmasti Decl., Exh. B, ¶131.

• That in most instances these letters and other communications that were on Oxford Defendants and UHC Defendants' letterheads, were sent by Optum Defendant employees and not signed by persons employed by Oxford Defendants. Sarmasti Decl., Exh. B, ¶132.

• That in fact, in various instances, the letters and other communications that were printed on Oxford Defendants' letterheads arrived in Optum's personalized envelopes instead of the Oxford Defendants' personalized envelopes. Sarmasti Decl., Exh. B, ¶133.

• And furthermore, since the filing of the complaint, to the extent the Oxford Defendants and UHC Defendants have paid BrainBuilders for its services, those payments have been, suddenly and systematically in almost all cases, substantially less than that which they paid to BrainBuilders in prior years, and substantially less than the fees and/or pricing schedules and rates uses, and even substantially less than what the Oxford Defendants and UHC Defendants pay their in-network participating providers. Sarmasti Decl., Exh. B, ¶135.

- That after BrainBuilders filed its complaint, the Oxford Defendants and UHC Defendants have repeatedly and falsely claimed to have not received the claims, and claims documentation, that are submitted by BrainBuilders in support of the services it has provided, regardless of whether such claims, and claims documentation, were sent by electronic, hard-copy mail, or facsimile.  <u>Sarmasti Decl.</u>, Exh. B, ¶¶136 – 137.

- And, that the Oxford Defendants and UHC Defendants have internally flagged BrainBuilders so as to disallow the payment of claims relating to BrainBuilders' services, and that the proposed defendants' flagging of BrainBuilders is without a legitimate basis and intended to financially harm BrainBuilders and tortuously interfere with BrainBuilders' existing and prospective relationship with its patients. <u>Sarmasti Decl.</u>, Exh. B, ¶¶138 – 139.

None of the above allegations were raised or implicate the proposed defendants in BrainBuilders' initial complaint.

There are other indicators and factors that contradict Optum's claim that BrainBuilders motion is simply a haphazard attempt to divest the court of diversity jurisdiction.  For instance, BrainBuilders' initial complaint mentioned UnitedHealthcare of Texas, Inc. (along with Oxford NJ, Oxford Health Insurance, Inc. UnitedHealthcare of New York, Inc. and others) as one of the entities that as a result of (or in reliance on) Optum's tortuous conduct, had not paid BrainBuilders for its services. Optum however has not attempted to join UnitedHealthcare of

Texas, Inc. as a defendant -- because it has not seen any evidence that it has had any involvement in the acts being alleged in BrainBuilders' proposed complaint.

Similarly, BrainBuilders has not attempted to join OSCAR Insurance Corporation ("OSCAR") or OSCAR Garden State Ins. Corp., a New Jersey entity ("OSCAR Garden State"); if its sole purpose was to defeat diversity jurisdiction, BrainBuilders would have sought to join them.[2] BrainBuilders however did not name OSCAR and OSCAR Garden State as defendants—just as it did not initially name Oxford NJ as a defendant—because its allegations do not attribute any tortuous conduct to OSCAR and OSCAR Garden State. This shows BrainBuilders' is not seeking to amend its complaint for the purpose of defeating diversity jurisdiction.

Finally, it must be noted that BrainBuilders' current motion is unlike those cases to which Optum cites. In those cases, the plaintiffs' initially-filed complaints contained the same factual allegations that were contained in their proposed

---

[2] In its proposed complaint, BrainBuilders is alleging *after it filed* this action against Optum, the Optum Defendants have been sending letters to and engaging in communications with BrainBuilders' patients covered by or through the OSCAR Plans (defined to include OSCAR Garden State) *falsely* telling the patients they need to switch from BrainBuilders to providers that are within the "Optum" network of providers, and that if they do not, the services they want to receive or have been receiving from BrainBuilders will not be paid by the OSCAR Plans if they continue with BrainBuilders. Sarmasti Decl., Exh. B, ¶¶150-151. BrainBuilders' proposed complaint further details that Optum's claims are false, that Optum is not the OSCAR Plans' Administrator, and as proof of the falsity of Optum's statements, BrainBuilders' alleges that none of the OSCAR Plan documents mention – much less require – that those patients use the "Optum" network. Sarmasti Decl., Exh. B, ¶¶142 – 156.

complaints, and those plaintiffs could not offer an explanation for the failure to name the additional defendants other than to claim it was merely "oversight". For instance, Optum cites to and relies on Jordan v. AlliedBarton Sec. Servs. In Jordan, the plaintiff argued that failing to initially name the proposed defendants as parties "was an oversight"; the court however recognized that the plaintiff knew about the non-diverse defendant's "activities" at the time of suit but must have knowingly chose not to include them as a defendant. Jordan v. AlliedBarton Sec. Servs., 2010 U.S. Dist. LEXIS 119408, *9 (D.N.J. Nov. 10, 2010). Another case Optum relies on is Parson v. Home Depot USA, Inc.  In Parson, the court denied plaintiff's motion because the proposed defendant (Grasso) was referred to several times in the original complaint and "his role in Plaintiff's allegations was made clear at the time" and "the plaintiff ha[d] not provided any new information to further clarify his [Grasso's] conduct or to change the scope of his participation", and the "only excuse" plaintiff had offered for the failure to join him initially was "simple oversight". Parson v. Home Depot USA, Inc., 2013 U.S. Dist. LEXIS 175185, *7-8 (D.N.J. Dec. 13, 2013).

Here, BrainBuilders' proposed complaint alleges new facts, or *at the very least* alleges additional facts and "new information that further clarify" the proposed defendants' conduct or "change the scope of [the proposed defendants'] participation".  Id.

8

In sum, BrainBuilders' references to Oxford NJ and the other proposed defendants did not attribute any wrongdoing to these proposed defendants. On the other hand, the new and additional allegations in BrainBuilders' proposed complaint detail the proposed defendants' involvement and actions, most, if not all of which, occurred *after* BrainBuilders had filed its initial complaint.

Here, Optum has failed to "show that there is no reasonable basis in fact or colorable ground supporting [BrainBuilders'] claim[s] against the [proposed] defendants or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Stavitski, 2018 U.S. Dist. LEXIS 9366 (D.N.J. Jan. 22, 2018) *quoting* Chaborek, 254 F. Supp. 3d 748, 751 (E.D. Pa. 2017) *quoting* Brown, 575 F.3d 322, 326 (3d Cir. 2009).

*B.* The Second *Hensgens* factor:

With respect to the second factor – i.e., whether BrainBuilders was dilatory in seeking to amend its complaint – Optum argues that because 168 days has passed since this matter was removed to this court, and 95 days has passed since Optum filed its motion to dismiss, it evidences BrainBuilders has been dilatory.

Optum's opposition does not offer any valid support or detail as to how or why the passage of this time equates to BrainBuilders being dilatory. Instead, Optum argues two of the same points it raised under the earlier Brief heading ((Point II.A.1) to support its argument here.

Its first argument claims "even though it was <u>aware</u> <u>of</u> <u>the</u> <u>existence</u> [emphasis added] of the non-diverse Oxford NJ at the time it filed its Complaint, BrainBuilders waited until after Optum filed its Motion to Dismiss the Complaint on March 30, 2018 to seek to amend and remand." <u>Optum Br.</u>, pg. 11.  As argued earlier in this brief, simply being aware of a non-diverse defendant's existence (as a person or entity) is the not the equivalent of <u>being aware of</u> the non-diverse <u>defendant's actions or wrongdoings</u>. <u>City of Perth Amboy</u>, 539 F. Supp. 2d 742, 746 (D.N.J. 2008) (The "mere awareness of a non-diverse party prior to the filing of a complaint combined with a failure to include that party in the original complaint" <u>does</u> <u>not</u> "demonstrate a *per se* intent to defeat diversity.")

Optum's second argument claims the allegations BrainBuilders has raised in paragraphs 115 through 121 of BrainBuilders complaint – which are facts relating to information BrainBuilders later gleaned from Ms. Dodd's carefully worded Declaration – should have been noticed in lesser time. BrainBuilders' factual allegations gathered from information in Ms. Dodd's declaration concerns only one of the proposed defendants – OptumHealth Behavioral Solutions (hereinafter, "OHBS"). OHBS however does not challenge or defeat diversity jurisdiction inasmuch as it appears OHBS is not a New Jersey entity.  Therefore, it is difficult to see how this argument serves to support Optum's opposition that has primarily focused on preventing the inclusion of Oxford NJ in this matter. Nonetheless, as

10

explained in BrainBuilders' proposed complaint, it appears Ms. Dodd prepared her declaration using carefully selected words (aimed to avoid disclosing incriminating information and at the same time being as truthful as possible) so as to keep BrainBuilders in the dark about OHBS's role. Therefore, neither BrainBuilders nor its counsel should be faulted for not quickly recognizing the potential significance of the information in the carefully worded Dodd Declaration.

Separately, BrainBuilders notes that a portion of Optum's own brief supports a conclusion that BrainBuilders was not dilatory.  In its Brief, Optum references a discovery dispute that was discussed between Optum's counsel and this counsel in early May 2018 relating to a subpoena which BrainBuilders served on OSCAR.[3] In its Brief, Optum admits that "the <u>only</u> matter BrainBuilders had raised with Optum's counsel in the intervening seven months … relates to Optum's alleged interference with the OSCAR health plans." <u>Optum Br.</u>, pg. 9. This fact actually shows BrainBuilders <u>was</u> <u>not</u> dilatory (rather than the opposite), and was not sitting idle. If BrainBuilders had raised these issues in early May 2018, then that would show BrainBuilders' awareness of these proposed defendants' involvement and actions dating before May 2018. The fact that these issues were not discussed as part of the same discussion in May 2018 runs counter to Optum's claim.

---

[3] BrainBuilders had served the subpoena on OSCAR because BrainBuilders discovered that Optum may be deleting emails relevant to this litigation.  Optum however objected to the subpoena and has since resisted BrainBuilders' attempt to learn the details of Optum's relationship with OSCAR and OSCAR Garden State.

Finally, BrainBuilders cannot be faulted or criticized for seeking to amend its complaint at this time, and its actions were not dilatory but rather responsible. As alleged in BrainBuilders proposed complaint, these proposed defendants have played a role that involves a *systematic and continuing* attack on BrainBuilders *after* it filed its complaint against Optum. Processing of claims submitted by healthcare providers is not a task that takes a few days or a few weeks. It is a process that takes at least several months of time from the time claims are submitted, supporting documents follow, and appeals. The pattern that is alleged in BrainBuilders' proposed complaint does not emerge and reveal itself within a few days or weeks or based on a few claims. BrainBuilders new allegations are based on results of thousands and thousands of claims during the past several months. *See e.g.*, <u>Sarmasti Decl.</u>, Exh. B, ¶¶128 – 140.[4]

As such, Optum has failed to provide any details – much less establish – BrainBuilders has been dilatory.

---

[4] If BrainBuilders had hastily attempted to amend its complaint and make these allegations month ago, then Optum would have argued that it is unreasonable, indeed possibly frivolous, for BrainBuilders to hastily attempt to amend its complaint to raise these allegations based on what it saw with respect to a few claims. Doing the responsible and reasonable thing, BrainBuilders spent time resubmitting those claims through different avenues (facsimile, mail, electronic means), but the proposed entities continued to claim to not receive the claims, or asked for supporting records. BrainBuilders acted responsibly in attempting to comply with requests for supporting documents that were later revealed to be disingenuous when the proposed defendants then continued to repeatedly claim to have not received the supporting documents regardless of the medium through which it was sent.

C.    The Third _Hensgens_ factor:

With respect to the third factor – i.e., whether BrainBuilders will be prejudiced if it is not allowed to amend its complaint – Optum makes three arguments, all of which should be rejected.

First, Optum' opposition incorrectly claims that "[t]he only 'injury' BrainBuilders alleges it will suffer … is the 'prejudice' of having to 'litigate these claims in two separate cases'." Optum Br., pg. 14. That is incorrect. As indicated in BrainBuilders' moving papers, the statute of limitations in New Jersey for a defamation claim is one year. N.J.S.A. §2A:14-3. BrainBuilders has alleged that Optum began sending the defamatory letters and made the defamatory communications to BrainBuilders' patients in late July 2017. BrainBuilders filed its instant motion on July 2, 2018, which in part seeks to amend its complaint in order to include OHBS as an additional defendant with respect to its defamation claim because of information it learned from Ms. Dodd's Declaration after it filed its complaint. If BrainBuilders is not permitted to amend its complaint it may be prejudiced inasmuch as it will have to file a separate action and be subjected to OHBS raising a statute of limitations defense.

Optum's Brief and arguments completely ignore this statute of limitations issue (raised in BB's Br., pgs. 7 – 8) and the significant prejudice to BrainBuilders if its motion is denied.

Second, Optum challenges BrainBuilders' reference to and reliance on Chambers v. Gesell, 120 F.R.D. 1, 2 (D.D.C. 1988) and its argument that it does not have the ability to dismiss this case pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(i) and refile a complaint in State court that includes all the proposed defendants. BB's Br., pg 10.  Contrary to Optum's claim (at Optum Br., pg. 15) the Dodd Declaration (Doc. 8) does include facts and at least one document (Exhibit B (Doc. 8-2)) that are not referenced or alleged in BrainBuilders' initial complaint. Ms. Dodd's Declaration contains two separate Exhibits.  Exhibit B is the copy of a letter that Optum allegedly sent to BrainBuilders in July 2017.  Ms. Dodd uses the second letter (Exhibit B) to offer the factual claim that the letter to BrainBuilders' patients was merely meant to communicate the message that the processing of claims for BrainBuilders' services were being *temporarily* suspended. These are new facts which Optum injected into its Rule 12(b)(6) motion to dismiss—ones which were not raised in BrainBuilders' complaint. Furthermore, BrainBuilders' complaint does not make any mention of a letter from Optum to BrainBuilders, or any mention of the letter that was attached to Ms. Dodd's Declaration. BrainBuilders' complaint also does not allege what Ms. Dodd claims in her Declaration—i.e., that Optum had wrongfully told BrainBuilders' patients that processing of BrainBuilders' services were being *temporarily suspended*—a point which has been argued in BrainBuilders' Brief filed in opposition to Optum's

pending Rule 12(b)(6) motion (Doc. 9, pgs. 8-9, including ftnt. 2 & pg. 11).   Ms. Dodd's factual statements and Exhibit B were offered by Optum in order to factually counter BrainBuilders' factual allegations.

Therefore, inasmuch as Optum's Rule 12(b)(6) motion is pending and Optum has included documents and additional facts as part of its motion which are not raised within BrainBuilders' complaint, it would be irresponsible for BrainBuilders' to simply assume it can withdraw its complaint under Rule 41 in order to refile it with these additional defendants.[5]

Therefore, for the reasons stated in BrainBuilders initial moving papers and this Reply Brief, BrainBuilders will be prejudiced if it is not allowed to amend its complaint.[6]

D.   The Fourth *Hensgens* factor:

---

[5] Certainly, during the pendency of this motion, Optum did not offer to withdraw its motion to dismiss in order to permit BrainBuilders to refile its complaint and include these additional proposed defendants, and claims in a separately filed case.

[6] Although it is not one of the *Hensgens* factors, BrainBuilders notes that Optum's opposition does not claim it will suffer prejudice if BrainBuilders is permitted to file its proposed complaint. Cornell & Co. Inc. v. Occupational Safety & Health Review Comm'n., 573 F.2d 820, 824-825 (3d Cir. 1978); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) ("Prejudice to the nonmoving party is the touchstone for denial of an amendment."); Fox Paper Ltd. v. Hanover Ins. Co., 2016 U.S. Dist. LEXIS 28730, *6 (D.N.J. Mar. 4, 2016) ("Incidental prejudice is insufficient grounds on which to deny leave to amend.") *citing* In re Caterpillar, 67 F. Supp. 3d 663, 668 (D.N.J. Dec. 16, 2014).

Optum's argument with respect to the fourth *Hensgens* factor relies on Optum's ERISA preemption argument that Optum claims provides the Court subject matter jurisdiction. BrainBuilders respectfully submits Optum's arguments in this regard should fail for the reasons set forth below.

In sum, it is respectfully submitted that Optum has failed to meet its burden.

**2. Optum argues BrainBuilders' causes of action are essentially ERISA claims and the Court should therefore continue to retain jurisdiction (Optum's Point II.C):**

As a general matter, "removal statutes are 'strictly construed against removal and <u>all doubts should be resolved in favor of remand</u> [emphasis added].'" <u>Boyer v. Snap-on Tools Corp.</u>, 913 F.2d 108, 111 (3d Cir. 1990).  Therefore here, Optum as the removing party "bears the burden of establishing federal jurisdiction." <u>Lafetra v. Kone Elevator</u>, 2010 U.S. Dist. LEXIS 44421, *4 (D.N.J. May 6, 2010) *citing* <u>Penn v. Wal-Mart Store, Inc.</u>, 116 F. Supp. 2d 557, 561 (D.N.J. Sept. 29, 2000). Optum's opposition fails to meet that burden for the following reasons.

Overall, Optum attempts to equate BrainBuilders' case to those lines of cases in which healthcare providers have filed lawsuits solely aimed at collecting on denied and underpaid claims through assignment of benefits given to the healthcare providers from their patients. The cornerstone of those lines of cases is that those healthcare providers raised ERISA claims against the carriers in order to collect on unpaid or underpaid claims by the carriers by standing in the shoes of

the patients through the assignment of claims and benefits they obtained from their patients.  That, however, is not what is happening here.  Indeed, nowhere within BrainBuilders' initial complaint or proposed complaint is there an allegation that BrainBuilders is looking to collect on claims through assignment of benefits from the patients or that it is seeking ERISA related remedies by standing in the shoes of the patients. Indeed, the words "assignment", "assigned", or "assignment of benefits" do not appear anywhere within BrainBuilders' complaint or proposed complaint. *See* Sarmasti Decl., Exh. A and Exh. B.

Further supporting this point is the fact that when Optum first removed this case to federal court, it removed solely based on diversity jurisdiction. (*See* Doc. 1) Later, when it filed its currently pending Rule 12(b)(6) motion, it did not raise or seek dismissal of the BrainBuilders' (state common law) claims by arguing ERISA preemption. Indeed, neither Optum's removal papers, nor its Rule 12(b)(6) motion mention "ERISA", much less argue it.  In arguing BrainBuilders had failed to meet the *Hensgens* factors, Optum has claimed there is no significant difference between the allegations in BrainBuilders initial complaint and its proposed complaint.  It that is indeed accurate—i.e., that there is no material difference between the factual allegations in BrainBuilders' initial complaint and its proposed complaint—then Optum would have either removed this case based on diversity and subject matter jurisdiction, or based a part of its Rule 12(b)(6) motion on ERISA preemption. The

fact Optum did not do that undermines both of Optum's arguments: (i) that BrainBuilders proposed complaint is materially the same as its initial complaint and therefore it has failed to meet the *Hensgens* factors; and Optum's argument that BrainBuilders' case is essentially an ERISA case.

In an effort to buttress the glaring absence of ERISA-related claims in BrainBuilders' case, Optum attempts to inject its own facts and arguments—arguments which it has no standing to raise on behalf of BrainBuilders—by offering the Declaration of Ms. Laura Hanson (Doc. 27-2), and several sample claim forms that are attached as Exhibits to the Declaration, in order to be able to argue that because those few sample claims indicate the existence of an assignment of benefits (*but only as to those few claims*) BrainBuilders should step into the shoes of its patients and re-characterize its causes of action under ERISA. Optum's argument and approach however completely ignores the fact that it was BrainBuilders (not BrainBuilders' patients) that were the target of the proposed defendants' attacks and defamatory statements, and ignores BrainBuilders allegations that BrainBuilders (and not its patients) has been the subject of a conspiracy between Optum and the proposed defendants. Therefore, BrainBuilders cannot logically or practically seek redress for Optum and the proposed defendants' tortuous actions by stepping into the shoes of its patients through assignment of benefits and then seek redress through ERISA statutes and

regulations in order to prosecute these claims.  Under these circumstances, the two-pronged test in Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004) are not met—i.e., as an out-of-network who is not a plan beneficiary, BrainBuilders cannot seek remedy for the tortuous acts against it pursuant to §502(a) of ERISA, and there are independent legal duties that support BrainBuilders' claims against Optum and the proposed defendants. The two prongs of ERISA preemption test are conjunctive and Optum must demonstrate both in order to establish jurisdiction, but it has not. N.J. Carpenters v. Tishman Constr. Corp., 760 F.3d 297, 303 (3d Cir. 2014).

"As broad as ERISA preemption may be … it does not foreclose a plaintiff from pleading a state law claim based on a legal duty that is independent from ERISA or an ERISA-governed plan." Jewish Lifeline Network, Inc. v. Oxford Health Plans (NJ), Inc., 2015 U.S. Dist. LEXIS 64297, *7 (D.N.J. May 18, 2015). "[P]reemption is mandated if a plaintiff is entitled to recover 'only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA' exists."  Id. (emphasis in the original); citing Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004) and Pascack Valley Hosp., 388 F.3d at 400.

Furthermore, prosecuting BrainBuilders' claims against these proposed defendants will not require the review of Plan terms. As alleged by BrainBuilders,

the actions of these proposed defendants after it filed its Complaint against Optum have been systematic and uniform. BrainBuilders can establish its case through statistical, numerical and historical information, along with its own business records without the need to necessarily interpret Plan terms.

There is the possibility that Optum and/or the proposed Defendants may attempt to raise ERISA plan terms *as a defense* or a basis to justify their actions against BrainBuilders during this period. Any such attempt however does not factually or legally support Optum's opposition to BrainBuilders' current motion to remand or its argument that the court has subject matter jurisdiction due to ERISA.

It is not legally supported because "it is settled law that a case may *not* [emphasis in the original] be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, *and* even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987); *see also* Mersmann v. Cont'l. Airlines, 335 F. Supp. 2d 544, 546 ftnt. 5 (D.N.J. Aug. 17, 2004).

Furthermore, inferences or vague allegations in a complaint are not sufficient to confer ERISA standing. MedWell, LLC v. Cigna Healthcare of New Jersey, Inc., 2013 U.S. Dist. LEXIS 144577 (D.N.J. Oct. 7, 2013); N. Jersey Ctr.

For Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey, Inc., 2008

U.S. Dist. LEXIS 71231 (D.N.J. Sept. 18, 2008); Emergency Physicians of St.

Clare's v. United Health Care, 2014 U.S. Dist. LEXIS 178042, *8 (D.N.J. Dec. 29,

2014). Here, Optum is essentially asking the Court to *infer* that BrainBuilders case

is essentially an ERISA case.

Optum's position also is not factually supported because: First, one does not

need to refer to and interpret the terms of an ERISA plan to garner why *all* of the

proposed defendants systematically claimed to not receive BrainBuilders' claims

or the supporting documents for those claims, or why BrainBuilders was flagged

by these proposed defendants as alleged in BrainBuilders' proposed complaint.

Second, the only way Optum and the proposed defendants can justify their actions

against BrainBuilders during this period is if the terms of <u>*all*</u> of the Plans that they

held *and* <u>*all*</u> of the Plans that they administered were identical or significantly

similar—which is a highly unlikely—so as to explain and justify the uniform and

systematic way in which these proposed defendants have handled the thousands

and thousands of claims from BrainBuilders.

For the foregoing reasons, Optum's arguments that the court retains subject-

matter jurisdiction are factually unsupported and legally incorrect.

**3. Optum argues that BrainBuilders' proposed amended complaint is futile (Optum's Point II.B):**

As a preliminary issue, as indicated earlier in this Brief, if the Court concludes BrainBuilders may file its proposed complaint, and join non-diverse defendants, it is divested of jurisdiction and unable to considering the sufficiency of BrainBuilders' factual allegations and Optum's arguments in Point II.B. Stavitski, 2018 U.S. Dist. LEXIS 9366, *12-13 (Jan. 22, 2018).

In point II.B.1 Optum attempts to incorporate its earlier argument from its currently pending Rule 12(b)(6) motion in response to BrainBuilders' Counts II-VI of BrainBuilders' proposed complaint. Optum's incorporation approach does not provide a valid opposition to these counts because the factual allegations in the proposed complaint are significantly different and include facts that arose after BrainBuilders filed its initial complaint. Furthermore, BrainBuilders' proposed complaint now contains a cause of action for conspiracy. Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages. Board of Education v. Hoek, 38 N.J. 213, 238 (1962).  Under New Jersey law, in order to prove the existence of a conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators because it is well known that the nature of a conspiracy is such that more often than not the only type of evidence available is circumstantial in nature. Morgan v. Union County Bd. Of Chosen Freeholders, 268 N.J. Super. 337, 364-365 (App. Div. 1993); *see also* Board of Education v. Hoek, 38 N.J. at 239 (The nature of a conspiracy is such that

more often than not the only type of evidence available to prove the conspiracy is circumstantial evidence.)   Furthermore, a plaintiff seeking redress need not prove that each participant in a conspiracy knew the exact limits of the illegal plan or the identity of all participants, and the agreement need not be express. Morgan v. Union County Bd. Of Chosen Freeholders, 268 N.J. Super. at 365.

The only argument Optum offers in response to BrainBuilders' conspiracy cause of action is in Point II.B.2 where it generally and simply claims the cause of action is preempted by ERISA.   In Point II.B.2 Optum also cites to Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc. 2012 WL 762498, at *8-9 (D.N.J. Mar. 6, 2012) to argue BrainBuilders' unjust enrichment claim is preempted by ERISA and therefore futile. A review of Broad St. Surgical indicates that the Court there had cited to Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 544 n.6 (App. Div. 2009) and 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 464 (1963).   A review of these two cases however fail to reveal a link between those rulings and the Court's ruling in Broad St. Surgical, or so much as a remote connection to the issues in this case. Therefore, Optum's reliance on Broad St. Surgical appears to be highly tenuous. However, the ruling in In re K-Dur Litigation, 338 F. Supp. 2d 517 (D.N.J. Sept. 29, 2004) appears to be more relevant to the argument Optum attempts to raise with respect to BrainBuilders' unjust enrichment claim. In In re K-Dur, the court held that with respect to unjust

enrichment claims "a benefit conferred need not mirror the actual loss of the plaintiff" but rather "[t]he critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct." In re K-Dur Litigation, 338 F. Supp. 2d at 544.  In re K-Dur Litigation's ruling with respect to unjust enrichment appears to have since been follow by dozens of other decisions and courts, whereas the same does not appear to have occurred with respect to the decision in Broad St. Surgical.

## CONCLUSION

For all the aforementioned reasons, BrainBuilders respectfully requests its motion be granted in its entirety.

Respectfully submitted,
SARMASTI PLLC
*Attorneys for plaintiff BrainBuilders, LLC*

Dated: August 31, 2018                   By:  __/s/ Vafa Sarmasti____
                                              Vafa Sarmasti, Esq.
                                              vafa@sarmastipllc.com

24