UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRAINBUILDERS, LLC,**<br><br>     **Plaintiff,**<br><br>v.<br><br>**OPTUM, INC. et al**<br><br>     **Defendants.** | **Civil Action No. 18-638 (JMV)**<br><br>**AMENDED<br>REPORT & RECOMMENDATION** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff BrainBuilders, LLC ("Plaintiff") for leave to file an Amended Complaint. Dkt. No. 20. Defendant Optum, Inc. ("Defendant") opposes Plaintiff's motion. Dkt. No. 27. Pursuant to Local Civil Rule 72.1(a)(2), the Honorable John Michael Vasquez, U.S.D.J., referred the present Motion to the undersigned for Report and Recommendation. Having considered the parties' written submissions pursuant to Federal Rule of Civil Procedure 78, for good cause shown and for the reasons set forth herein, the undersigned respectfully recommends that Plaintiff's motion to amend and remand this matter to the Superior Court of New Jersey, Bergen County be **GRANTED.**

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's Initial Complaint in this matter was filed in the Superior Court of New Jersey, Bergen County, on November 28, 2017. See Dkt. No. 1, Ex. A, Plaintiff's Complaint ("Pl. Compl."). Plaintiff's Initial Complaint seeks damages arising from what it alleges is a "pattern of activities that have been aimed at severing and tortuously interfering with BrainBuilders' relationship with its patients." Id. at ¶ 64. Plaintiff, an alleged non-participating health care

1

provider,[1] who claims to provide services to children with autism spectrum related disorders, alleges in particular that Defendant, an alleged consultant to insurance plans, administrators, and/or health care providers, distributed letters to Plaintiff's patients stating that Defendant would no longer reimburse Plaintiff's patients for services received from Plaintiff due to "potential insurance fraud and other violations of state and federal law." Id. at ¶¶ 31, 58, and 69. Plaintiff further contends that the alleged letter sent by Defendant invited Plaintiff's patients and their parents to contact the Defendant to make "arrangements for continued treatment with a *participating* practitioner."[2] Id. at ¶ 70. Further, the letter purportedly provided a contact number to allow Defendant to assist patients in locating a participating provider and warned that if the patients continued to be treated by Plaintiff beyond 30 days, patients would be responsible for the cost of the services without coverage available to them under their insurance plans. Id. at ¶¶ 71-72. Plaintiff claims the letter and allegations and/or statements attributed to the letter are false and are one of "several written and verbal communications with BrainBuilders' patients and their parents aimed at severing BrainBuilders' relationship with its patients." Id. at ¶ 74.

Plaintiff further claims that its patients who were targeted by Defendant with the above-mentioned communications are covered by health care insurers such as Oxford Health Insurance, Inc. ("Oxford"), Oxford, Health Plans, LLC ("Oxford Health Plans"), and Oxford Health Plans (NJ) Inc. ("Oxford NJ"), who are also alleged to be clients and users of Defendant. Id. at ¶ 76. Plaintiff further states that Defendant has used its false accusations to instruct or have its clients,

---

[1] In its Complaint, Plaintiff has defined a non-participating (or out-of-network) health care provider as a health care provider who (1) has not entered into a written contract with an health insurance plan and/or administrator, (2) its name and contact information is not listed under the health insurance plan's and/or administrator's directory; and (3) does not have the types of obligations that are imposed on participating providers through the network contracts. See Dkt. No. 1, Ex. A, Pl. Compl. at ¶ 19.

[2] Plaintiff has defined participating providers as doctors, health care providers, and/or facilities that have entered into a contract with a health care insurance plan and/or administrator in order to be part of the health care insurance plan's and/or administrator's network of "participating" health care practices and providers. See Dkt. No. 1, Ex. A, Pl. Compl. at ¶ 14.

users, and principals such as Oxford, Oxford Health Plans and Oxford NJ to "systematically not process and not pay any claims submitted by BrainBuilders." Id. at ¶ 79.  And, as result of Defendant's alleged actions, Plaintiff claims it has not been paid for any of its services by patients insured by plans underwritten or sold by Oxford, Oxford Health Plans, Oxford NJ, and other insurers UnitedHealthcare of New York ("UnitedHealthcare NY"), UnitedHealthcare Services, Inc. ("UnitedHealthcare, Inc."), UnitedHealthcare Services, LLC ("UnitedHealthcare, LLC") or UnitedHealthcare of Texas, Inc. ("UnitedHealthcare TX"). Id. at ¶ 80.  Plaintiff contends that Defendant committed these actions knowingly aimed at, or negligently resulting in (1) unlawfully steering away patients being treated by Plaintiff, a non-participating provider to participating providers within Oxford, Oxford Health Plans, Oxford NJ and other insurers UnitedHealthcare NY, UnitedHealthcare, Inc., UnitedHealthcare, LLC or UnitedHealthcare TX.; and (2) various health care insurance plans and administrators ceasing payments to Plaintiff for the treatments that Plaintiff has rendered to its patients for the past several months, and for the services that it continues to provide.  Id. at ¶¶ 90 and 91.  Plaintiff argues that Defendant committed these alleged actions on "behalf of itself or for its own benefit, and as an agent of the Plans, or agent of the Administrators of the Plans, that insured the children treated by BrainBuilders." Id. at ¶ 62.

Plaintiff's Initial Complaint asserts the following causes of actions against Defendant: (1) Tortious Interference with Current Business Relations; (2) Tortious Interference with Prospective Economic Advantage; (3) Negligence; (4) Trade Libel/False Light; and (5) Defamation, Slander, and Libel.  The Complaint seeks compensatory, consequential, and punitive damages, attorneys' fees, and costs of suits.

Defendant removed the action to this Court on January 16, 2019 on diversity grounds pursuant to 28 U.S.C. § 1441, citing this Court's jurisdiction under 28 U.S.C. § 1441(b). See Dkt.

No. 1., Notice of Removal. Following the parties consenting to extend Defendant's time to answer Plaintiff's Initial Complaint, Defendant moved to dismiss Plaintiff's Initial Complaint under Federal Rule of Civil Procedure 12(b)(6). See Dkt. No. 8. Before the Court could render a ruling on Defendant's Motion to Dismiss however, Plaintiff filed the present motion seeking leave to amend its Complaint under Federal Rule of Civil Procedure 15(a)(2). Plaintiff's Amended Complaint seeks to join fifteen (15) proposed defendants, including an alleged, non-diverse proposed defendant, Oxford NJ. In its Amended Complaint, Plaintiff claims that the fifteen proposed defendants have participated, and continue to participate, in Defendant's alleged actions of attempting to steer patients away from being treated by Plaintiff and to stop various health care insurance plans and administrators from making payments to Plaintiff for the treatments that Plaintiff has rendered to its patients for the past several months, and for services that it continues to provide. See Dkt. No. 20, Declaration of Vafa Sarmasti, Esq. ("Decl. of Sarmasti"), Ex. A., Amended Complaint ("Am. Compl.") at ¶¶ 171 and 173.

Additionally, Plaintiff's Amended Complaint makes further allegations against the Defendant and proposed defendants, relating to conduct committed after Plaintiff filed its Initial Complaint. See Dkt. No. 20, Decl. of Sarmasti, Ex. A., Am. Compl. Accordingly, Plaintiff has asserted two (2) additional causes of action in its Amended Complaint; proposed Count I. Conspiracy and Aiding in the Commission of a Tort; and proposed Count VII. Unjust Enrichment/Quantum Meruit.

## II. DISCUSSION

### A. Legal Standard

Under Rule 15(a)(2), a party may amend its pleading with leave of court and the court "should freely give leave when justice so requires." Id. The Third Circuit has taken a liberal

approach to allowing amendments under this rule so that claims may be decided on the merits and not on any technicality. WHY ASAP, LLC v. Compact Power, 461 F. Supp. 2d 308, 311 (D.N.J. 2006) (citing Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990)). Absent "undue delay, bad faith, dilatory motive, unfair prejudice, or futility or amendment," the court should grant leave to amend. Id. at 311 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

"[W]here a motion involves adding defendants to a case that has been removed, the Court must consider whether the motion is governed by Rule 15, Rule 20 or the removal statute," or some combination thereof. Stavitski v. Safeguard Props. Mgmt., LLC, 2018 U.S. Dist. LEXIS 9366, *6, 2018 WL 501646 (D.N.J. January 19, 2018) (citing Bernheim v. Estate of Bedrick, 2007 U.S. Dist. LEXIS 73498, 2001 WL 2900377, at *1-2 (D.N.J. Oct. 1, 2007)). "Although motions to amend are liberally granted under Rules 15(a) and Rule 20, a court must scrutinize motions to amend more carefully where a plaintiff seeks to join a non-diverse party, and as a result, deprive a federal court of subject matter jurisdiction." Id. (citing City of Perth Amboy v. Safeco Ins. Co. of Am., 539 F. Supp. 2d 742, 746 (D.N.J. 2008)). Courts in the Third Circuit apply 28 U.S.C. § 1447(e) to post-removal motions to join non-diverse defendants. See, e.g., Perth Amboy, 539 F. Supp. 2d at 746; see also Bernheim, 2007 U.S. Dist. LEXIS 73498, 2001 WL 2900377, at *1-2.

The district court may, in its discretion, permit joinder and remand the action to state court or deny joinder and maintain federal jurisdiction. Stavitski, 2018 U.S. Dist. LEXIS 9366, *6-7; see also Hayden v. Westfield Ins. Co., 586 F. App'x 835, 840-41 (3d Cir. 2014). In Stavitski, the Court read as follows:

> [C]ourts in this district have adopted the Hensgens factors to assess such motions to amend ... : (1) whether the purpose of the plaintiffs motion is to defeat diversity jurisdiction; (2) whether the plaintiff was dilatory in seeking to amend the complaint; (3) whether plaintiff will be prejudiced if the motion is not granted; and (4) any other equitable factors.

5

Stavitski, 2018 U.S. Dist. LEXIS 9366, *6-7. (citing Rodriguez v. Walmart, 2017 U.S. Dist. LEXIS 208844, 2017 WL 6508357, at *2 (D.N.J. Dec. 20, 2017) (citing Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)); Perth Amboy, 539 F. Supp. 2d at 746; see also Hayden, 586 F. App'x at 840-41 (noting that the Third Circuit has "not yet addressed the appropriate analytical approach to § 1447(e)," but citing Hensgens with approval)).

Further, an amendment is futile when it fails to state a claim upon which relief may be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The standard of review for futility is therefore the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Id. When faced with a motion to dismiss for failure to state a claim, the court conducts a two-step analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual elements are separated from the legal elements of the claim. Id. at 210-11. The court must accept the factual elements alleged in the well-pleaded complaint as true but may disregard any legal conclusions. Id. Second, the court must determine if the facts alleged are sufficient to show a "plausible claim for relief." Id. at 210 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)). A plausible claim is one which "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1948). "Ultimately, this two-part analysis is 'context-specific' and requires the court to draw on 'its judicial experience and common sense' to determine if the facts pled in the complaint have 'nudged [plaintiff's] claims' over the line from '[merely] conceivable or [possible] to plausible.'" Hobson v. St. Luke's Hospital and Health Network, 735 F. Supp. 2d 206, 211 (E.D. Pa. 2010) (quoting Fowler, 578 F.3d at 211-12).

**B. Plaintiff's Motion to Join Oxford NJ and to Remand this Case Back to State Court**

Plaintiff seeks to join Oxford NJ, which would result in this Court's subject matter jurisdiction of diversity being defeated as Plaintiff is a New Jersey limited liability company and Oxford NJ is alleged to be a New Jersey Corporation. See Dkt. No. 20, Decl. of Sarmasti, Ex. A., Am. Compl. at ¶ ¶ 1 and 17. Plaintiff claims that it wishes to add Oxford NJ now because Oxford NJ and the other proposed defendants "engaged in tortious acts and conspired with Optum to continue and expand the tortious acts that initially started by Optum . . . based on facts that have been revealed more recently." See Dkt. No. 21, Plaintiff's Brief in Support ("Pl. Brief in Supp."), pgs. 1-2. Defendant does not dispute Oxford NJ's status as a New Jersey Corporation. See Dkt. No. 27, Defendant's Brief in Opposition ("Def. Brief in Opp."). However, Defendant does contest the joining of Oxford NJ as an attempt by Plaintiff to deprive this Court of diversity jurisdiction because Plaintiff has been well aware of Oxford NJ long ago, "as the allegations in the [Plaintiff's Initial] Complaint show, and it offers no different or new conduct by Oxford NJ in the Proposed Complaint that should support a claim against it." See Dkt. No. 27, Def. Brief in Opp. at pg. 1. After an analysis of the Hensgens factors, the Court finds that this matter is best served by being remanded back to the state court.

The first factor under the Hensgens analysis is "whether the purpose of the plaintiff's motion is to defeat diversity jurisdiction . . ." Hensgens, 833 F.2d at 1182. Courts in this District have found that "[g]enerally, if a proposed claim is viable, and there is a genuine intent to prosecute the claim in good faith, the primary purpose of joinder is not to defeat federal jurisdiction." Stavitski, 2018 U.S. Dist. LEXIS 9366 at *7 (citing Winograd v. Mercedes-Benz USA, LLC, 2017 U.S. Dist. LEXIS 105195, *11 (D.N.J. June 14, 2017); see also Mersmann v. Cont'l Airlines, 335 F. Supp. 2d 544, 547-48 (D.N.J. 2004)). However, where a plaintiff knows of a defendant's

7

activities but chooses not to include him, courts will deny the late attempt to join, viewing the late addition as "nothing more than an attempt to destroy diversity." Parson v. Home Depot USA, Inc., 2013 U.S. Dist. LEXIS 175185, *7, 2013 WL 6587316 (D.N.J. Dec. 13, 2013) (citing Salamore v. Carter's Retail, Inc., No. 095856, 2010 WL 762192, at *2 (D.N.J. Mar. 5, 2010). (see also Smith v. Citimortgage, Inc., 2016 U.S. Dist. LEXIS 103809 (D.N.J. Aug. 5, 2016). Plaintiff admits to being aware of Oxford NJ at the point of its initial filling of its Complaint, as Oxford NJ is cited to multiple times in Plaintiff's Initial Complaint, but argues that it did not seek to add Oxford NJ at that time because "all of BrainBuilders' allegations in the proposed amended complaint relate to events and acts that occurred *after* Brain Builders filed its Complaint." See Dkt. No. 21, Pl. Brief in Supp. at pg. 6. To the contrary, Defendant argues that not only was Plaintiff aware of Oxford NJ but also of Oxford NJ's alleged tortious conduct at the time the Initial Complaint was filed. See Dkt. No. 27, Def. Brief in Opp. at pgs. 5-6.

The Court finds that Plaintiff's primary purpose of its Amended Complaint is not to defeat federal jurisdiction. Although, Plaintiff was aware of Oxford NJ from the outset and there may have been possible claims against Oxford NJ at the very beginning, Plaintiff alleges that Oxford has now participated in new conduct since the filing of the Initial Complaint. Specifically, "Oxford Defendants," which Plaintiff has included Oxford NJ under this grouping of proposed defendants,[3] are alleged to have: (1) allowed "Optum Defendants"[4] to send communications to Plaintiff's patients and parents that claims derived from Plaintiff's services will not be pre-authorized and payments for Plaintiff's services will not be made; (2) systematically paid less on all claims compared to prior years; (3) claimed to not receive claim documentation; and (4) flagged Plaintiff's

---

[3] See Dkt. No. 20, Decl. of Sarmasti, Ex. A., Am. Compl. at ¶ 21.
[4] Plaintiff has defined "Optum Defendants" to include Optum among additional, propose defendants. See Dkt. No. 20, Decl. of Sarmasti, Ex. A., Am. Compl. at ¶ 10.

claims "so as to disallow the timely and proper processing and/or payment of claims and/or appeals relating to BrainBuilders' services that are provided to patients insured or covered by policies that are issued or administered by the Oxford Defendants . . . ." Id. at 130-140.

Although Plaintiff has previously alleged similar and/or related conduct by Oxford NJ, it now seems that Plaintiff is alleging that the conduct has continued and/or magnified on the part of Oxford NJ. Therefore, now electing to name Oxford NJ at this early juncture of the litigation does point to a "genuine intent to prosecute the claim in good faith." Stavitski, 2018 U.S. Dist. LEXIS 9366, at *7. Moreover, if Plaintiff's true intent were to defeat diversity jurisdiction, Plaintiff could have named Oxford NJ at any point after the case was removed from state court. See Wild v. Carriage Servs., 2017 U.S. Dist. LEXIS 148457, *8, 2017 WL 4030576 (D.N.J. Sept. 13, 2017) (finding plaintiff did not seek to amend "simply to divest the District Court of subject matter jurisdiction as [p]laintiff could have named the non-diverse defendant from the outset, thus 'effectively blocking removal'"). Therefore, the Court finds that the first factor under the Hensgens analysis weighs in favor of permitting joinder.

Under the second Hensgens factor, the Court must decide "whether the plaintiff was dilatory in seeking to amend the complaint[.]" Hensgens, 833 F.2d at 1182. Upon careful review, the Court finds that this factor does not favor either party over the other. Plaintiff filed its present motion more than 30 days after removal, the normal time period for filing a motion for remand following removal, but before discovery started. Defendant argues that Plaintiff has been dilatory because Plaintiff waited 168 days between Defendant's Notice of Removal from the state court on January 16, 2018 [Dkt. No. 1] and the filing of Plaintiff's present motion, July 2, 2018 [Dkt. No. 20] and offers no reason for the delay. See Dkt. No. 27, Def. Brief in Opp. at pg. 11. Moreover, Defendant argues that Plaintiff has waited 95 days after Defendant filed its Motion to Dismiss

9

before Plaintiff filed its present motion.[5]  However, Plaintiff urges that it has not been dilatory simply because of the passage of time and further reasons that oral argument has not even been scheduled with regard to Defendant's Motion to Dismiss, nor has discovery been exchanged or propounded between the parties.  See Dkt. No. 21, Pl. Brief in Supp. at pg. 9.  The Court notes that Plaintiff was aware of some of Oxford NJ's alleged wrongful actions at the time of filing its Initial Complaint yet chose not to name Oxford NJ as a defendant and waited until the present to move to amend its complaint.  Nevertheless, Defendant has not demonstrated any prejudice Defendant has suffered relating to Plaintiff's delay in filing the present motion.  Again, Defendant's Motion to Dismiss has not been orally argued or ruled upon nor has discovery between the parties even began.  Therefore, the second factor under the Hensgens test weighs equally in favor of both parties.

Under the third Hensgens factor, the Court must analyze whether the "plaintiff will be prejudiced if the motion is not granted[.]"  Hensgens, 833 F.2d at 1182.  Plaintiff's only true argument is that it would be prejudiced because it would have to litigate this matter in two separate forums.  However, as Defendant correctly points out, courts in this District have noted that plaintiffs are not necessarily prejudiced by having to concurrently litigate similar claims at both the state and federal levels.  Wild, 2017 U.S. Dist. LEXIS 148457 at *9 (citing Arevalo v. Brighton Gardens, 2016 U.S. Dist. LEXIS 126261, *11, (D.N.J. Sept. 16, 2016)); see also Salamone, 2010 U.S. Dist. LEXIS 20165, at *7.  Still, the Court must also take into consideration: (1) the obvious expenses involved and (2) the risk of receiving inconsistent determinations of claim in determining whether Plaintiff will be possibly prejudiced in litigating a matter in two separate forums.  See

---

[5] Defendant filed its Motion to Dismiss under Fed. R. Civ. Pro. 12(b)6 on March 30, 2018.  See Dkt. No. 8. Defendant's Motion to Dismiss was administratively terminated by the Hon. Judge Vasquez pending the resolution of the present motion.  See Dkt. No. 33.

10

Wild, 2017 U.S. Dist. LEXIS 148457 at **9-10 (holding that plaintiff ran the risk of receiving inconsistent determinations on claims of defamation and tortious interference if plaintiff simultaneously litigated those same claims, based on the same facts, in both federal and state court). Given these considerations, the third Hensgens factor favors permitting joinder.

Under the fourth Hensgens factor, the Court may consider any other equitable factors. Hensgens, 833 F.2d at 1182. Plaintiff argues that it would be a waste of judicial resources to have this matter litigated in both federal and state court. Defendant again posits that Plaintiff would not suffer a significant injury litigating in two forums. In addition, Defendant raises the notion that this matter, if remanded, may be removed from the state court yet again because the "Proposed Complaint raises a federal question (*i.e.* ERISA complete preemption) entitling Defendant to file another Notice of Removal." See Dkt. No. 27, Def. Brief in Opp. at pg. 16. At the current juncture, however, Plaintiff's Amended Complaint does not assert an ERISA claim, nor does it raise another federal question. Therefore, the equities favor permitting joinder and remanding this matter back to state court.

Accordingly, the Court finds that the Hensgens factors weigh in favor of permitting Plaintiff to amend its Complaint and that remanding this matter back to state court is appropriate. The undersigned hereby recommends that Plaintiff's motion for leave to file an Amended Complaint and motion to remand to state court be **GRANTED**.[6]

## III. CONCLUSION

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

---

[6] The Court notes that Defendant also asserts that Plaintiff's Amended Complaint should be denied on the grounds that it fails to state a claim upon which relief can be granted. Having recommended that Plaintiff be permitted to file it's Amended Complaint and that this matter should be remanded to state court, the Court recommends that Defendant's futility argument be left to the state court to evaluate.

**IT IS** on this 4th day of February, 2019,

**RECOMMENDED** that Plaintiff's motion for leave to file an Amended Complaint [Dkt. No. 20] is **GRANTED**; and it is

**RECOMMENDED** that this matter be remanded to the New Jersey Superior Court, Bergen County, and it is further

**ORDERED** that pursuant to L. Civ. R. 72.1 and Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. The Clerk of Court is directed to serve the parties with electronic notice upon filing this Report and Recommendation.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**